UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CARLA M. COCHRAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:23CV762 HEA |
| ) | |
| SSM-SLUH, INC, d/b/a SSMHEALTH SAINT ) | |
| LOUIS UNIVERSITY HOSPITAL and SSM ) | |
| HEALTH CARE CORPORATION, d/b/a ) | |
| SSM HEALTH, ) | |
| ) | |
| Defendants. ) | |

## **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss, [Doc. No. 8]. Plaintiff has filed a response to the Motion, to which Defendants have filed a reply. For the reasons set forth below, the Court will grant Defendants' motion.

Facts and Background

On June 12, 2023, Plaintiff filed this action alleging she was constructively discharged from her employment with Defendants in violation of 42 U.S.C. §2000e, *et seq*. (Title VII). Plaintiff contends she was discriminated against based on her religious beliefs. Plaintiff asserts she was employed by SSM Health and applied for an exemption to a COVID-19 vaccination requirement in July 2021. Defendants granted the exemption shortly after Plaintiff's request.

Plaintiff further alleges she was singled out and was subjected to harsh and unreasonable treatment by her supervisors, who accused her of "no morals or values: because of her religious beliefs and exemption from vaccination.

Plaintiff acknowledges SSM-SLUH, Inc. d/b/a SSM Saint Louis University Hospital and SSM Health Care Corporation d/b/a SSM Health are Missouri Not for Profit corporations registered with the State of Missouri Secretary of State and doing business in St. Louis City, State of Missouri as SSM St. Louis University Hospital at an office located at 1201 S. Grand Ave., St. Louis, MO 63104 where Plaintiff was located for the duration of Plaintiff's employment with Defendant.

Defendants move to dismiss on the ground that SSM Health is a religious organization and it therefore exempt from the provisions of Title VII prohibiting religious discrimination. Plaintiff does not substantively dispute Defendants' assertion, rather, Plaintiff argues the Court may not consider Defendants' exhibits which were attached to the Motion to Dismiss.

## Legal Standard

In order "[t]o survive a motion to dismiss, a complaint must plead sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Edwards v. City of Florissant*, 58 F.4th 372, 376 (8th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible if the plaintiff pleads facts that allow the court to draw the reasonable inference that the Defendants is liable for

the misconduct alleged." *Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 953 (8th Cir. 2023) (internal quotation marks and alteration omitted) (quoting *Iqbal*, 556 U.S. at 678)). "If, on the other hand, the plaintiff pleads facts that are merely consistent with a Defendants' liability, the complaint stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotation marks and citation omitted); accord Edwards, 58 F.4th at 377 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." (quoting *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937)).

In deciding whether a complaint satisfies the plausibility test, the Court must "accept 'as true the complaint's factual allegations and grant[ ] all reasonable inferences to the non-moving party.'" *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (alteration in original) (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009)). This rule "is inapplicable to legal conclusions," which the Court may disregard. *Iqbal*, 556 U.S. at 678. Likewise, "'naked assertions devoid of further factual enhancement,' do not suffice, nor do '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Roberson v. Dakota Boys & Girls Ranch*, 42 F.4th 924, 928 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678). With few exceptions, the Rule 12(b)(6) analysis is constrained to factual matter alleged in the

complaint. See *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) ("[T]he court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Id.* (citations omitted)).

"[I]n a motion to dismiss, a court may consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record.'" *United States ex rel. Kraxberger v. Kan. City Power & Light Co.*, 756 F.3d 1075, 1083 (8th Cir. 2014) (alteration in original) (quoting *Miller*, 688 F.3d at 931 n.3.

On a motion to dismiss, the Court may consider not just the allegations in the complaint, but also "matters incorporated by reference or integral to the claim[s], items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits ... whose authenticity is unquestioned." *Zean v. Fairview Health Services*, 858 F.3d 520, 527 (8th Cir. 2017). Defendant's by-laws and articles of incorporation are public records and may be considered by the Court without converting the motion into one for summary judgment. *Id*; *see also Burlison*, 2023 WL 4560796, at *3. Because of this standard, the Court may consider the exhibits attached to the Motion, notwithstanding Plaintiff's attempt to disqualify them.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or discriminate against any individual ... because of such individual's ... religion." 42 U.S.C. § 2000e-2(a). To "minimize governmental interference with the decision-making process in religions," Congress amended Title VII to exempt a qualifying "religious organization" from claims of religious discrimination "with respect to the employment of individuals of a particular religion to perform work connected with the carrying on" by such organization. 42 U.S.C. § 2000e-1(a); *Corp. of Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327, 336 (1987) (explaining the history of Title VII's amendments and exemptions). Once an entity is determined to be a "religious organization," courts do not inquire into the organization's justifications behind its employment decisions. *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989) (explaining "[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretation of those creeds.").

Title VII does not define what constitutes a "religious entity," so courts look to a "variety of factors when analyzing whether an employer falls within the scope of the 2000e-1(a) exemption." *Jacobs v. Mercy Health*, No. 4:22-CV-01204-AGF, 2024 WL 894861, at *4 (E.D. Mo. Mar. 1, 2024); *Conway v. Mercy Hosp. St. Louis*, No. 4:22-CV-1113 RLW, 2024 WL 551892, at *3 (E.D. Mo. Feb. 12, 2024)

5

(quoting *Boydston v. Mercy Hosp. Ardmore, Inc.*, No. CIV-18-444-G, 2020 WL 1448112, at *4 (W.D. Okla. Mar. 25, 2020)). Because the Eighth Circuit has yet to establish guidelines to determine whether an entity is a religious organization, see *Jacobs* 2024 WL 894861 and *Conway*, 2024 WL 551892, at *4, this district and several others have relied on the Third Circuit's approach in *LeBoon v. Lancaster Jewish Community Center Association*, 503 F.3d 217, 226 (3d Cir. 2007). See *Boydston*, 2020 WL 1448112, at *4; *Scaffidi v. New Orleans Mission, Inc.*, 612 F. Supp. 3d 630, 636 (E.D. La. 2020) (relying on *LeBoon* factors in absence of Fifth Circuit guidance); *Braun v. St. Pius X Parish*, 827 F. Supp. 2d 1312, 1317 (N.D. Okla. 2011) (emphasizing that both parties referenced *LeBoon* factors in disputing whether the employer was a religious organization).

The Third Circuit in *LeBoon* presented nine factors as relevant to determine whether an employer is a religious organization and therefore protected under Title VII's exemption:

> (1) whether the entity operates for a profit, (2) whether it produces a secular product, (3) whether the entity's articles of incorporation or other pertinent documents state a religious purpose, (4) whether it is owned, affiliated with or financially supported by a formally religious entity such as a church or synagogue, (5) whether a formally religious entity participates in the management, for instance by having representatives on the board of trustees, (6) whether the entity holds itself out to the public as secular or sectarian, (7) whether the entity regularly includes prayer or other forms of worship in its activities, (8) whether it includes religious instruction in its curriculum, to the extent it is an educational institution, and (9) whether its membership is made up by coreligionists.

6

503 F.3d at 226 (citations omitted); Jacobs, 2024 WL 894861 at *4; *Conway*, 2024 WL 551892, at *4 (citing *LeBoon* factors).

The relevance and weight of these factors depend on the circumstances of the particular case. *LeBoon*, 503 F.3d at 227; *Conway,* 2024 WL 551892, at *4 (noting the Third Circuit's case-by-case analysis directive). Like this district's recent decision in *Jacobs, Conway*, and *Burlison*, and aligned with several other districts, the Court will apply the *LeBoon* framework in determining whether SSM Health qualifies as a religious organization under Title VII.

Applying the *LeBoon* framework upon which this district relied in *Jacobs*, *Conway*, and *Burlison*, based upon the pleadings, public records, and those items upon which the Court may take judicial notice, the record clearly establishes that Defendants are religious organizations, as Defendants have correctly and sufficiently detailed as provided below.

In 1874, a religious and benevolent corporation under Missouri law was formed.  See Mo. Rev. Stat. Ch. 352. (Exhibit B, Articles of Agreement dated November 18, 1874). This civil law corporation eventually became SSMHCC.

In 1880, the Vatican decreed the Sisters of St. Mary to be a public juridic person of the Roman Catholic Church. SSM-SLUH opened in 1932 as Firmin Desloge Memorial Hospital, a partnership between the Sisters of St. Mary and St. Louis University. The Franciscan Sisters of Mary sponsored the multi-institutional

health system known as SSM Health until 2013. On November 16, 2013, the Holy See, a division of the Vatican and the governing body of the Roman Catholic Church, created SSM Health Ministries as a public juridic person upon the petition of the Franciscan Sisters of Mary to continue the religious health care ministry of the Sisters. (Exhibit C, Decree from Congregation for Institutes of Consecrated Life and Canonical Statutes; Exhibit D, Canonical Statutes).

The Articles of Incorporation of SSMHCC and SSM-SLUH, Inc. and the Canonical Statutes of SSM Health Ministries all set forth SSM Health's religious purpose and mission. According to the Canonical Statutes the purpose of SSM Health Ministries is "to further the healing ministry of Jesus Christ with special attention to those persons who are poor and vulnerable." (Exhibit D, Art. II).

SSM Health Ministries "carries out its activities in the secular sphere through a civil corporation known as SSM Health Care Corporation, a Missouri nonprofit corporation, and such other civil legal entity or other entities as the Members shall determine." (*Id*., Art. I). SSM Health Ministries must "assure that the mission, values, and governance of SSM Health Care Corporation are in conformity with the mission and teaching of the Roman Catholic Church and further the spirit and call of St. Francis of Assisi and Mother Odilia Berger, to be the very presence of the loving, serving, compassionate and healing Jesus among his people." (*Id*., Art. II). SSMHCC's purpose as described in its Articles is to

8

provide "health care, health education, housing services, child care services, services for the elderly and related services and facilities and/or other charitable activities . . . in accordance with . . . the teachings and mission of the Roman Catholic Church." (Exhibit F, Articles of Incorporation of SSMHCC, Art. 4). SSM-SLUH's purpose as described in its Articles is to provide "health care, health education, . . . and/or other charitable activities . . . in accordance with . . . the teachings and mission of the Roman Catholic Church." (Exhibit H, Art. V).

SSM Health Ministries exercises management and operational control over SSM Health, including its officers, directors, and health ministries. Pursuant to the Canonical Statutes, the Franciscan Sisters of Mary has the power to appoint and remove the Members of SSM Health Ministries. (Exhibit D, Art. III). In turn, the Members of SSM Health Ministries dually serve as the Members of SSMHCC and have the power to appoint the officers of the Board of SSMHCC. (Exhibit D, Art. IV, ¶¶ 7, 11; Exhibit E, Bylaws of SSMHCC, Art. IV, § 2). Thus the Members of SSM Health Ministries, dually serving as the Members of SSMHCC exercise a variety of reserved powers over SSMHCC including: (a) to establish and change the mission, philosophy, and values of SSMHCC; (b) to appoint the Board of Directors of SSMHCC (except those serving ex officio); (c) to approve amendments to the Articles of Incorporation of SSMHCC; (d) to approve amendments to the Bylaws of SSMHCC; (e) to approve merger, consolidation, or

9

dissolution of SSMHCC; (f) to approve the sale, conveyance, assignment, transfer, alienation, pledge, encumbrance, mortgage or lease of any property or any interest therein of SSMHCC, in accordance with the policies approved by the Members; (g) to approve any borrowing guarantees of SSMHCC, (h) to approve any actions of SSMHCC for itself or its Controlled Subsidiaries (including SSM-SLUH), which under Canon Law would require the consent or approval of the Members. (Exhibit E, Art. IV). The Members of SSM Health Ministries, dually serving as the Members of SSMHCC, also have the power to elect the SSMHCC's Board's Chairperson and Vice Chairperson. (Exhibit E, Art. VIII).

SSM Health Ministries, the local Bishop, and the Holy See each have power over SSM Health's operations and property. All property of SSM Health Ministries is ecclesiastical property of the Roman Catholic Church and must be administered as such under canon law. (Exhibit D, Art. X). SSM Health Ministries must seek the opinion of the local Bishop before alienating temporal goods that exceed a certain value. (Exhibit D, Art. VI, ¶ 4). The Holy See must approve "any lease, sale, mortgage or encumbrance, disposition or other form of alienation of the stable patrimony of SSM Health Ministries" in excess of a certain value. (Exhibit D, Art. VII, ¶ 3).

The Roman Catholic Church manages SSM Health through the dual role of the Members of SSM Health Ministries also serving as the Members of SSMHCC

and through the reserved powers that the Members retain over SSMHCC. (Exhibit D, Art. IV; Exhibit E, Art. IV). In addition to the dual membership status, the Members of SSM Health Ministries also serve ex officio on the SSMHCC Board with voting privileges. (Exhibit E, Art. VI, Section 2).

The Roman Catholic Church has also publicly declared SSMHCC, SSM Health Care St. Louis, SSM-SLUH, and multiple other SSM Health ministries to be a part of the Church through their inclusion in the Official Catholic Directory. (Exhibit I, Official Catholic Directory, pg. 1213 (2021)). The Official Catholic Directory is a published book, widely disseminated, publicly available, and generally known. A Roman Catholic Bishop must determine that an entity is operated, supervised, or controlled by the church to be included in the directory, and thus any entity listed in the Official Catholic Directory can take advantage of the group tax exemption ruling issued to the United States Conference of Catholic Bishops. (Exhibit I, Official Catholic Directory, p. A-6). SSM Health derives its tax-exempt status from the group ruling and their listing in the Official Catholic Directory. *Id*.

SSM Health Regularly Includes Prayer and Worship in its Activities.

Pursuant to its Canonical Statutes, SSM Health Ministries, SSMHCC, and its health ministries must "adhere to and be guided by the Ethical and Religious Directives for Catholic Health Care Services," which are promulgated by the

11

United States Conference of Catholic Bishops. (Exhibit D, Art. II). The Bylaws of SSM Health Ministries further require that the Members must complete an initial formation process, participate in a continuing faith formation process. (Exhibit J, SSM Health Ministries Bylaws, Art. 3.3.) In addition, the SSM Health Ministries Bylaws provide that "the majority of the Members must be practicing Catholics in good standing with the Catholic Church and must be chosen on the basis of their knowledge, experience, availability, and commitment to the Catholic healthcare ministry." (Id. Section 3.6). Likewise, the Board Members of SSMHCC and SSM-SLUH, Inc. must understand and be willing to support the mission, philosophy, and values of the Franciscan Sisters of Mary, SSM Health Ministries and SSM Health. (Exhibit E, Art. VI, Section 2; Exhibit G, SSM-SLUH Bylaws, Art. V, Section II).

For all of these reasons, Defendants are religious organizations, exempt from Title VII's provisions regarding religious discrimination.

Taken together, these factors readily establish SSM Health as a religious entity within the meaning of Title VII's exemption. Title VII's exemption shields Defendant from religious discrimination claims, including claims arising from disputes over vaccination requirements. See *Jacobs*, 2024 WL 894861, *Conway*, 2024 WL 551892; *Burlison*, 2023 WL 4560796.

## Conclusion

For the reasons set forth above,

12

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, [Doc. No. 8] is **GRANTED**.

An Order of Dismissal is entered this same date.

Dated this 5th day of June, 2024.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE